Oh, that was fast. All right. So, do we have Mr. George there, too? Oh, okay. Well, this is like theater. You both made a change very quickly. You were ready. Okay. Thank you. Ten minutes each side. All right. Thank you. Good morning, Your Honors. May it please the Court. I'm Kathleen Foley here on behalf of Petitioner. I aspire to reserve two minutes for rebuttal, please. This is a simple case. In Esquivel-Quintana v. Sessions, the Supreme Court decided unanimously that the word abuse in the phrase sexual abuse of a minor unambiguously excludes consensual sex with someone 16 or older because a 16-year-old can legally consent to sex. That holding applies equally to the word abuse in the phrase crime of child abuse, which Congress added to the INA at the same time. Esquivel-Quintana controls here. Petitioner was convicted of violating California Penal Code Section 288.2b, which criminalized consensual communication proposing consensual sexual conduct between people who, under Esquivel-Quintana, are free to consent. So if we read Esquivel-Quintana v. Sessions as limited to statutory rape offenses that criminalize conduct based solely on the age of the participants, does it still support your position? And how? I would push back on the premise there, but let me answer your actual question first. I think it does still support our position because it's a definitive ruling on the generic age of consent at the time both of these provisions were enacted. And so if the court were not to accept our overarching argument that Esquivel-Quintana directly controls the outcome here, it would have to decide whether consensual communication between 17-year-old sexual partners constituted child abuse. And I think, by the way, that the premise on which this court has to decide this case is that child abuse requires harm. That's the position the government has defended in its letter brief. That is consistent with this court's holding in Fregoso, although I understand the court may or may not feel itself bound by that. And that's something that dictionary definitions support, contemporary dictionary definitions. But I do want to push back on the notion that this is limited to statutory rape. The Supreme Court didn't limit its holding to crimes without a mens rea. The government latches onto the word solely in the sentence Your Honor just read, that is, were sexual intercourses abusive solely because of the ages of the participants? I think the attorney's general assertion is there's no realistic probability that California would charge a violation of Section 288.2G where the victim was not actually a child. Well, the government hasn't argued here that there isn't a realistic probability of prosecution, so I don't know that that issue is before the court. But even if it were, the circuit law is clear that where the state statute expressly sweeps more broadly than does the generic crime, then there's a realistic probability and no legal imagination is necessary in those circumstances for there to be a realistic probability. But going back to the Supreme Court's use of the word solely, the Supreme Court was there acknowledging that for purposes of the generic crime, the age of consent may be different where the participant and the victim are in some kind of special relationship. It expressly carved that out in several places in its opinion. It didn't need to decide that issue though because in the statute issue in Esquivel-Quintana, just like the statute issue here, there was no special relationship element. And what the Supreme Court did decide is that absent such an element, the generic age of consent is 16. But the big distinction between Esquivel and this case is that this statute requires harmful material, right? So I don't know how you distinguish that away. I mean, that's like a very big difference than just, you know, same age. Even if you're same age, if you're sending harmful material, that just is different. Well, I think what is harmful really varies depending on the age of the recipient. We, you know, certainly 30-year-olds sending obscene material back and forth. But even a 17-year-old sending harmful material to another 17-year-old maybe, probably, should be fine to be criminalized. I just think that if, I think that as the Fifth Circuit reasoned in Shroff v. Sessions, if it's not abuse to have actual sexual intercourse as a 17-year-old, then it simply can't be abuse to send explicit communications describing that contact, soliciting that contact, perhaps even photographs back and forth that might be consensually exchanged. And all of that be swept in by the statute here. And the government doesn't meaningfully dispute that. So I guess you could be consensually sent harmful material, and that should be fine. Is that your argument? You could consensually send and receive material that under California's definition of harmful matter. Do you have it off the top of your head? I don't have it, what harmful material means. I do, yeah, here. It's California Penal Code Section 313A. Harmful matter means matter taken as a whole, which to the average person applying contemporary statewide standards appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct, and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors. But the state doesn't get to decide what's harmful in this context. It gets to prescribe certain elements of crimes, and then the court decides for itself whether the conduct, the minimum culpable conduct under the state statute matches the generic crime. So what exactly happened here? So the facts of this case are that the petitioner, when he was 37 years old, was sending text messages, no images, to a girl who was 15 and then 16 years old for about a two-month period. He didn't ask her to meet up. He didn't, again, send any images, and he didn't even ask her to not tell anyone about these messages. But again, the categorical approach, which the court must apply here, mandates that the particular facts of this case not be considered, and the categorical developments. Well, right. I understand that, but you're not. But if we were speculating, yours is not one of the things that we're speculating could happen to 17-year-olds. That's true. The case at issue was not to 17-year-olds. But the point is that, and the government, again, does not dispute that two 17-year-olds exchanging consensual messages who are in an ongoing sexual relationship would be swept in by the statute, and that's the primary reason that it's overbroad. So if we read 1227 as including child endangerment, why would a violation of 288 2G not be encompassed by 1227? Well, as we argue in our opening letter brief, we think that the statutory phrase, crime of child abuse, child neglect, or child abandonment, even if it's considered as a unitary concept, is best read to cover non-injurious conduct, only where there's some duty to care for the child. And neither, we argue in our opening brief that an offer to distribute a harmful matter would be... But I guess what I'm saying is, let's assume that we don't all agree at the end of it. The three people that you see here are the ones that are going to be telling you that. So if we don't agree with how you're reading it, why wouldn't 288 2G not be encompassed by 1227? That's a hypothetical. You're saying there's reasons we shouldn't read it that way, but if we did... Your question is, why wouldn't it be child neglect? If we read 1227 as including child endangerment, if we publish on that and say that it does, then do you lose? No, we don't lose because there's, under Escrivil-Quintana, the generic age of consent is 16, and there's simply no danger to someone who is of an illegal age to consent to sexual intercourse, and thus, by extension, explicit messaging about that intercourse in the consensual exchange of messages. And again, the minimum culpable conduct here would be 17-year-olds exchanging messages, and they would not be endangered by that because they could legally consent to the underlying conduct that's described. I think you raised this earlier, but why do we think that there's a realistic probability that California would prosecute that? So again, the government hasn't argued that there's not a realistic probability, so I don't see that issue being before the court, but the California statute defines a minor as being someone under the age of 18, so it expressly sweeps more broadly than what we're arguing the generic definition is. But you don't have a case of anything like that, like of a 17-year-old on 17-year-old? No. But again, under this court's case law, in cases like Chavez-Solis, the court has said that where the state statute expressly sweeps more broadly than the generic definition, no legal imagination is required to find a realistic probability. So we believe that— Do you want to state the balance of your time? I would. Thank you. Thank you. Good morning. Good morning, Your Honor. May it please the court. Matthew George for the Attorney General. I want to jump into this hypothetical that's been proposed by a petitioner here about the consensual activity between 17-year-olds. I think the first point is, as the court has already sort of brought up, of the Duanis Alvarez type of position. I guess I wasn't as explicit as I should have been in the letter brief about that, but that's the point I was getting at about the fact that there's a possibility that 17-year-olds        there hasn't shown that to be the case. And so that's one response. The other issue— They haven't shown that—that it's a realistic probability? Correct, Your Honor. They haven't shown us a case or shown the facts in this case to meet that hypothetical scenario. The other issue with this sort of hypothetical is, I think, our sort of lay picturing of what that factual scenario looks like. And it also ignores the statutory language about the intents in this statute, which are the intent to arouse and the intent to seduce. And so it's not simply sort of a strict liability type of situation where consensual teenagers were sending sexy pics or whatever it might be. It necessarily includes that intent to arouse and that intent to seduce, which the California it requires this exploitation, this predation, this grooming type of activity. And so it's— But then how does that fall into Esquivel-Quintana territory, then? That's sort of the situation where we're looking at an apple and an orange and we're saying they're both fruit. Esquivel obviously involves sexual abuse of a minor. This case involves the crime of child abuse. They both have the word abuse. However, as the board explicitly points out in Velazquez-Herrera, the concept of child abuse is separate from both the words child and abuse. And looking at blacks, at least the— No, as I read Esquivel-Quintana saying sex between two minor—two 17-year-olds is not illegal, cannot be legal, and then—but the point here is that if you send—if two 17-year-olds send each other communications to try and have sex, then that could be, right? That could be— That could be illegal. A crime of child abuse? Yes. Well, it is here, yes. But I guess I'm not saying—but Esquivel is saying if two 17-year-olds are having sex that that's not child abuse, correct? No, that's not sexual abuse of a minor. Right. But then if the 17-year-old propositions another 17-year-old, you're saying that could be a crime of child abuse. If it met the definition of the statute in this case, yeah, it met a conviction in this case, yes. Going—going beyond that in terms of more hypothetical conduct, I'm not really sure because we're looking at this particular issue. In addition— I guess I'm just confused about if having sex between two 17-year-olds is not child abuse, but sending material to another 17-year-old to, you know, procure sex is, I—why—how is that—how can that be a distinction? It might not be sexual abuse of a minor, and that's where Schoff comes in. Schoff was a sexual abuse of a minor case. And so what they were just maybe a natural extension of that is if—if the activity itself wouldn't be sexual abuse of a minor, then sort of communicating about that activity might not be sexual abuse of a minor. But that's distinct from crime of child abuse. I see. Okay. And—and if you look at blacks or any legal—legal dictionary, sexual abuse, like child abuse, is defined separately. It's a—it's a distinct concept itself. Then abuse of a minor is different than child abuse? I—I couldn't find abuse of a minor, but child abuse is defined separately. Sexual abuse is defined separately, including the concept of, like, rape is one definition of sexual abuse, not necessarily of a minor. Well, so is the statute overbroad because it might cover the transmission of harmful Not this statute, because this statute requires a completed crime. And that's what the California courts have told us in column specifically. That's a case I cited in—in the brief. A conviction under this statute requires the completed crime, which requires both that the—the—the victim is an actual minor and that the victim actually received the harmful material. So maybe that's a—that's a question for a different statute. That's not the statute we have here. That's not the conviction we have here.  Thank you. So you're saying that Escobar-Quintana would have come out differently if the crime was of child abuse versus sexual abuse of a minor? It very well may have, Your Honor. Yes. I'm not sure I would believe that. But— I—I—I mean, this is— I guess what's the difference between those two? Well, they're—they're different words. I mean, it gets into some of the—the tools we use to define this crime, the generic definition of the crime. One is we're looking at—they're in different sections of the immigration nationality. How is it child abuse if a 17-year-old is having consensual sex with another 17-year-old? If they're having sex, well, I mean, I don't know. We would have to look at the— No, I'm wondering your definition of child abuse. How is that child abuse? How is that child abuse? Having— Two 17-year-olds having consensual sex. How is that child abuse? I'm not sure that would be, because I don't know if there's maltreatment of the child unless—I mean, unless the State has defined it in that way. Like here, because we have those— Well, you just said that if Quintana Escoval looked at child abuse, then it could have come out differently. Right. So you have to show me how two 17-year-olds having consensual sex could be child abuse. How it could be? Yes. I mean, it would depend on the—the crime being charged. I mean, it could be an abusive situation. I mean, it could be— Well, it's consensual. Right. If it's consensual and there's no age difference? Yes. I mean, it wouldn't be sexual abuse of a minor. I'm not— But you're saying it could be child abuse, right? I'm not sure I am necessarily saying it could be child abuse. Well, aren't we—if we—wouldn't we read Escoval-Quintana as solely limited to statutory rape offenses that criminalize conduct based solely on the age of the participants? Yes, Your Honor. I mean, that's explicitly what Escoval says it's limited to. And if you look at cases like Shaw, I mean, that is another sexual abuse of a minor case. Now, sexual abuse could be a subset of child abuse. It's sort of—if you look at the Venn diagram of child abuse being the big circle, maybe it's a wholly encompassed circle within it. And maybe, okay, if it's a consensual activity between two 17-year-olds, maybe that whole is removed from the bigger one. But we still have the bigger circle encompassing child abuse. And that's what we have. I think that's a better distinction, Quintana Escoval, than just saying they're different words. I mean, that's— The fact that one's limited to statutory rape and versus— I mean, that's what Escoval itself says. That's what it's limited to. And some of the same principles in terms of looking at the generic definition. For example, they're in different statutory sections. Sexual abuse of a minor is an aggravated felony versus a crime of child abuse is in a different subsection of the Immigration and Nationality Act. It doesn't impose all of the penalties that an aggravated felony would impose. It's a different—in a different section with different penalties, so on and so forth. That's one factor that courts have looked at in terms of distinguishing that language and looking at Escoval in terms of what impact it has. And many courts have said it has no impact in the child abuse realm. Thompson is a case out of the Fourth Circuit where they say it simply doesn't apply because it only really applies where the crime is based solely on an age difference. Where we have explicit intents, like we do here, an intent to arouse, an intent to seduce, that's bringing in more of that harmful language and making more of a distinction into that. In terms of, again, to the generic definition, I feel like in this case we've been arguing more in sort of the negative and what shouldn't be included. But in terms of a generic definition, even if it's just child abuse, Velasquez-Herrera is a good starting point, at least, as is the plurality decision in Diaz-Rodriguez. Obviously that's been vacated. They both engage in the same—in terms of what value does Escoval provide to us. It's engaging in that analysis of what do we look at to interpret the statutory language. It's looking at dictionary definitions. It's looking at the statutory construction. It's looking at the 50-state survey of what was going on in all the states in these types of child abuse, child neglect, child abandonment type of crimes. Even if we're just sort of going to apply the definition that Velasquez-Herrera set out, even if we're going to say some sort of—it doesn't necessarily require physical harm, however slight it can also include emotional harm. It can include injury to morals, and that's what Fregoso is well-recognized. That could be the harm if we're going to say harm is required. This statute meets that harm because of that intent to arouse, because of that intent to seduce. It's not simply sending consensual material. It's including those bad intents, and that's what California courts have said get us into that predation, exploitation, injury to morals type of area. I see my time is up unless the court has any other questions. Don't appear to be. Thank you. Very briefly because I don't have much time. I heard my friend concede that two 17-year-olds having consensual sex would not constitute child abuse. I believe that would suffice to resolve this case. I would note that California's definition of harmful matter doesn't actually require harm. It's simply a description of matter, so there's no finding of harm here with respect to a conviction. That's just not baked into the statute. I also want to note that intent to seduce or arouse someone who is of an age to consent, just like knowledge that they are of an age to consent, although of a minor, simply can't convert conduct that's not abusive into abusive conduct. That would be the equivalent of finding that having an evil-meaning mind in and of itself can render a conduct that is legal illegal. There's just no basis for that. Escobar-Quintana doesn't supply a basis for that, especially since the statute at issue in Escobar-Quintana essentially baked in a mens rea element in that if the defendant asserted a mistake of age to defense, the prosecutor would have to prove mens rea beyond a reasonable doubt. That's not something the Supreme Court mentioned, and it certainly would have if that were important. We'd ask the Court to grant the petition. Thank you both for your argument in this matter. It will stand submitted.
judges: CALLAHAN, BUMATAY, Rakoff